Raymond McILLWAIN and Delmar McILLWAIN d/b/a
McILLWAIN BROTHERS, A Partnership, *v.*
WELCO RICE MILLING CO.
d/b/a ROBERTS RICE MILLS

CA 79-123                          588 S.W. 2d 459

Opinion delivered October 10, 1979
and released for publication October 31, 1979

*Tiner & Easterling,* by: *Charles R. Easterling,* for appellants.

*Barrett, Wheatley, Smith & Deacon,* for appellee.

GEORGE HOWARD, JR., Judge. This appeal presents the following questions:

1. Did the trial court commit error in authorizing appellee to deduct from appellants' jury award $2,-

693.66 as rent due Lawrence Tilley, owner of part of the land on which appellants' rice crop was produced and who was not a party to the action?

2. Whether appellants are entitled to interest on the $261,035.99, that appellee admitted owing, from the date that appellants filed their lawsuit, November 29, 1977, to August 2, 1978, when appellee, pursuant to court order, delivered this money to appellants although appellants' recovery was less than what they sued for, but greater than what appellee admittèd owing.

The essential facts are: Appellants are rice producers of two varities known as Nato and Nortai. Appellee is a trader and markets this rice almost exclusively with the Kellogg Company.

During the spring of 1977, appellants and appellee entered into an oral agreement whereby appellee would purchase the rice produced by appellants, but agreed that the amount to be paid per bushel would be determined during the harvest season since it was difficult, if not in fact impossible, to determine what the competitive market price would be at that time. Between September 9, 1977, and October 20, 1977, appellants delivered to appellee 99,566.61 bushels of green rice, but after drying the deliveries aggregated 27,-462.28 bushels of Nato and 60,939.73 bushels of Nortai.

On October 20, 1977, appellants were advised that appellee would pay only $4.00 per bushel for both Nato and Nortai rice. Appellants rejected the offer, contending that the amount offered was not competitive and did not mirror the fair market price. On October 28, 1977, appellants demanded a settlement advising appellee that they would not accept anything less than $6.01 per bushel for the Nato variety and $5.91 per bushel for the Nortai variety. Appellee rejected appellants' offer. Appellants demanded a return of all of the rice delivered, minus reasonable deduction for storage and drying expense. Appellee also rejected this request.

On November 29, 1977, appellants filed their lawsuit seeking judgment for $607,010.00 with interest at the rate of

10% per annum from October 28, 1977, the date appellants made demand for settlement, until paid.

Appellee filed its answer alleging that appellee had offered to pay $4.48 per bushel for Nato rice and $4.20 per bushel for Nortai rice, both constituting grade number 2, minus the cost of drying, advancements made to appellants, combining expense and payments to owners of lands rented by appellants on which the rice was grown; and that appellants should be required to accept the settlement offered.

The matter was scheduled for trial on August 2, 1978, but was continued, at the request of appellee, on condition that appellee pay to appellants the amount that it admitted owing after the deduction of certain indebtedness — drying charges, combining expense, advances made to appellants and rent paid to owners of lands leased by appellants. Appellee delivered to appellants $261,035.99. This sum is based upon appellee's claim that appellants were entitled to $4.48 per bushel for 27,462.28 dry bushels of Nato rice and $4.20 per bushel for 60,939.73 bushels of Nortai rice.

On September 28, 1978, the matter proceeded to trial. The parties, by way of stipulation, submitted only one issue to the jury: What did appellee owe appellants per bushel for Nato grade number 2 and Nortai grade number 2 rice?

The jury found that appellee should pay $4.48 per bushel for the Nato variety as well as $4.48 per bushel for the Nortai variety. As a consequence, appellants were awarded an additional .28¢ per bushel on 60,939.73 bushels of Nortai rice, resulting in an award of $17,063.13.

On November 6, 1978, appellee filed its motion to enter judgment on the jury's verdict and further requested leave to deduct from the award $2,693.66 as rent due Lawrence Tilley, landlord of appellants'. The trial court entered its judgment on November 28, 1978, authorizing appellee to deduct the rent due Tilley and entered a $14,369.47 judgment for appellants with interest from September 29, 1977, until paid. The trial court denied appellants' request for in-

terest on the $261,035.99 from the date of their lawsuit to August 2, 1978.

It is plain that as a consequence of the jury award, appellants received .28¢ more for the 60,939.73 bushels of Nortai, aggregating a total recovery of $17,063.13. After the trial court authorized appellee to pay the rent due Lawrence Tilley, appellants realized a net gain of $14,369.47.

Appellants argue that the trial court in permitting this deduction, in effect, rendered a judgment on behalf of Lawrence Tilley who was not a party to the action. Further, appellants argue that the jury award was based solely upon an increasement of the price for the Nortai rice which was not grown on the land owned by Lawrence Tilley and to permit Tilley to share in the award is, in effect, to permit him to share in the value of something which he had no interest in.

We are not persuaded by appellants' argument and consequently, we reject appellants' position here in its entirely.

Ark. Stat. Ann. §51-201 (1971 Repl.), provides:

Every landlord shall have a lien upon the crop grown upon the demised premises in any year for rent that shall accrue for such year, and such lien shall continue for six [6] months after such rent shall become due and payable, and no longer.

Ark. Stat. Ann. §51-205 (1971 Repl.), states:

The purchaser or assignee of the receipt of any ginner, warehouse-holder or cotton factor or other bailee or any cotton, corn or other farm products in store or custody of such ginner, warehouseman, cotton factor, or other bailee *shall not be held to be an innocent purchaser of any such produce against the lien of any landlord or laborer.* (Emphasis added.)

It is undisputed that appellants delivered an aggregate of 99,566.61 bushels of green rice to appellee, some of which had been produced on lands owned by Tilley. We believe that

appellee had sufficient interest and equity in the produce to justify appellee in taking steps to see that the landlord's rent was paid. While it is not clear from the record just when Tilley's rent became due, it is plain that Tilley had contacted both appellants and appellee about his rent and, as a consequence, certain promises and acknowledgments were made. Under these circumstances, appellee might have concluded that the six months limitation contained in the statute was not a defense to any action against it by Tilley.

Moreover, all parties acknowledged that certain deductions were to be made from the gross proceeds, including rent to several land owners. By oversight, Lawrence Tilley was not paid.

Finally, we do not perceive the trial court's order authorizing appellee to deduct Tilley's rent from the jury award as constituting a judgment. Tilley was not a party to the action and there was no attempt by the trial court to adjudicate any issue that involved Tilley. The action of the trial court simply authorized appellee to pay Tilley.

Appellants also argue that the trial court erred in not allowing interest on $261,035.99 which appellee admitted that it owed appellants and which was delivered to appellants on August 2, 1978, pursuant to a court order. We believe that appellants' argument here has merit and we, accordingly, reverse the trial court.

It must be remembered that appellants delivered to appellee from September 9, 1977, to October 20, 1977; appellants filed their lawsuit on November 29, 1977. It was not until August 2, 1978, that appellee relinquished funds which it recognized as belonging to appellants. While appellee asserts that appellants were offered funds almost immediately after the dispute developed and that appellants could have received the proceeds by simply asking for them, it is plain that appellee's offer was not unconditional. Moreover, appellee made no effort to interplead the funds in court. Appellee delivered the proceeds to appellants as a condition precedent for a requested continuance of the case on August 2, 1978.

We are convinced that *Loomis* v. *Loomis*, 221 Ark. 743, 255 S.W.2d 671 (1973), is controlling here where the Arkansas Supreme Court stated:

> . . . The familiar rule that interest is not allowed on unliquidated demands does not mean that the defendant must in every instance know before the trial the exact amount he must pay if he loses. The rule applies principally to those cases in which the defendant is not in default for the reason that the extent of his liability can be determined only by litigation, as in a suit for personal injuries or for recovery upon quantum meruit . . .

> . . . [A] defendant's liability for breach of a contract to pay a definite sum of money may be uncertain, for the default may have saved the plaintiff the expense of full performance on his own part, and that saving may be a matter for the jury to determine. In spite of this uncertainty interest is recoverable from the date of the breach . . .

We hold that under the circumstances existing in this case, appellants are entitled to interest from the date of the filing of their lawsuit to August 2, 1978, the date that appellee delivered the funds to appellants at the rate of 6% per annum.

Affirmed in part and reversed in part and remanded for proceedings not inconsistent with this opinion.